O

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 06-350 DOC (JCx)                    Date:  July 31, 2012

Title: <u>MIKE RUTTI V. LOJACK CORPORATION, INC.</u>

PRESENT:

<u>THE HONORABLE DAVID O. CARTER, JUDGE</u>

<u>Julie Barrera</u>                              <u>     N/A     </u>
Courtroom Clerk                              Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFF:   ATTORNEYS PRESENT FOR DEFENDANT:

None Present                                    None Present

**PROCEEDINGS: (IN CHAMBERS): ORDER GRANTING IN PART AND**
**                                   DENYING IN PART PLAINTIFFS'**
**                                   MOTION FOR ATTORNEYS' FEES**

     Before the Court is a Motion for Attorneys' Fees filed by Plaintiffs in the above-captioned case (Docket 248). The Court finds the matter appropriate for decision without oral argument.  Fed R. Civ. P. 78; Local R. 7-15.  After considering the moving, opposing, and replying papers, the Court hereby GRANTS IN PART AND DENIES IN PART Plaintiffs' Motion for Attorneys' Fees.

     Accordingly, the hearing currently scheduled for August 6, 2012 at 8:30 a.m. is hereby removed from the calendar.

**I.     Background**

     Plaintiffs filed the above-captioned case on April 5, 2006, alleging that the labor practices of Defendant Lojack Corporation, Inc. ("Defendant") violated both the Fair Labor Standards Act, 29 U.S.C. § 216(b), (the "FLSA") and California law. Plaintiff alleged that Defendant failed to pay for "off-the-clock" work and sought lost wages, including liquidated damages and injunctive relief, as well as reasonable attorneys' fees and costs.

     This case has a fairly extensive procedural history. On August 16, 2007, this Court granted Defendant's Motion for Partial Summary Judgment, granting summary judgment

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 10-01392-DOC (RNBx)                      Date: July 19, 2011
                                                       Page 2

---

on all of Plaintiffs' federal claims (Docket 130).  The Court later dismissed Plaintiffs'
state law claims for lack of subject matter jurisdiction (Docket 139).  Plaintiffs appealed
the Court's summary judgment decision to the Ninth Circuit Court of Appeals.  On May
7, 2010, the Ninth Circuit issued an order affirming the majority of the Court's grant of
summary judgment but vacating the grant of summary judgment as to Plaintiffs' claim
that Defendant violated the FLSA by failing to compensate technicians for time spent on
personal data transmissions ("PDT") allegedly performed at the end of each work day.
*See Rutti v. LoJack Corp., Inc.*, 596 F.3d 1046, 1061 (9th Cir. 2010).  The Ninth Circuit
remanded the case for resolution of the PDT claim. On January 14, 2011, this Court
granted Plaintiffs' Motion for Conditional Class Certification of their FLSA Claim
(Docket 200). On the eve of the hearing on Defendant's motion for decertification, the
parties entered into a confidential settlement agreement. Plaintiffs now seek reasonable
attorneys' fees for their attorneys, Righetti & Glugoski, P.C. ("Counsel").


**II.      Discussion**


        Prevailing plaintiffs are entitled to attorneys' fees under the FLSA. *See* 29 U.S.C.
§ 216(b) (2006); *Newhouse v. Robert's llimaRE Tours, Inc.,* 708 F.2d 436, 441 (9th Cir.
1983) (the FLSA grants prevailing plaintiffs reasonable attorneys' fees, including fees for
appellate and post-remand services); *Yue Zhou v. Wang's Restaurant,* No. C 05-0279
PVT, 2007 WL 2298046, at *1 (N.D. Cal. Aug. 8, 2007) (an award of reasonable fees is
mandatory in FLSA actions). Defendant does not argue that Plaintiffs are not the
prevailing party; rather, the parties' dispute centers on the amount of Plaintiffs' fee
award.

        Plaintiffs' fees are calculated using the "lodestar" method, which is obtained by
multiplying the number of hours reasonably expended on litigation by a reasonable
hourly rate. *See Perdue v. Kenny A. ex rel. Winn*, __ U.S. __, 130 S.Ct. 1662, 1672
(2010) ("the lodestar figure has, as its name suggests, become the guiding light of our
fee-shifting jurisprudence") (internal citations omitted). There is a "strong" presumption
that the lodestar method results in a reasonable fee. *Id.* at 1673. After calculating the
lodestar, however, in rare cases it may be adjusted by any factors set forth in *Kerr v.*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 10-01392-DOC (RNBx)                          Date: July 19, 2011
                                                            Page 3

---

*Screen Extras Guild, Inc.*[1] that are not already subsumed by the lodestar inquiry. *See Cunningham v. County of Los Angeles,* 879 F.2d 481, 487 (9th Cir. 1988); *Blum v. Stenson,* 465 U.S. 886, 898-900 (1984). Subsumed factors include (1) insufficient documentation; (2) quality of representation; and (3) results obtained[2], *Cunningham,* 879 F.2d at 487, as well as (4) novelty and complexity of the issues; (5) special skill and experience of counsel; and (6) the superior performance of counsel. *Castro-Vega v. Waible,* No. 07-675-ST, 2008 WL 2704457, at *2 (D. Or. July 1, 2008). *See also Clark v. City of Los Angeles,* 803 F.2d 987, 990-91 (9th Cir. 1986).

        Plaintiffs seek a total of $1,100,000 in attorneys' fees and costs, which is the maximum available under the parties' confidential settlement agreement.[3] This adjusted lodestar is apparently less than one half of the $2,321,027 total lodestar and costs incurred in the case, which Plaintiffs agreed to cap at $1.1 million based on their recognition that some of the work at issue in the federal case overlaps with that of the state law claims that are proceeding separately in state court. *See* Motion for Attorneys' Fees, 12-13. The chart below provides a summary of the information used to calculate Plaintiffs' total lodestar amount.

| Attorney | Rate | Hours | Total Fees |
|---|---|---|---|
| Matthew Righetti | $750 | 1,352.75 | $1,014,563.50 |
| John Glugoski | $650 | 1,703.05 | $1,106,982.50 |
| Michael Righetti | $300 | 168 | $50,400 |
| Erin Breznikar- | $300 | 85.10 | $25,530 |

---

[1] The *Kerr* factors include: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client, and 12) awards in similar cases. *See Ballen* v. *City of Redmond,* 466 F.3d 736, 746 9th Cir.2006).

[2] Only in exceptional cases may the results obtained be used for "double counting" purposes. *See Cunningham,* 879 F.2d at 488-89.

[3] The amount of attorneys' fees was apparently not a confidential aspect of the confidential settlement agreement, as the parties have discussed the $1.1 million cap in publicly filed documents.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 10-01392-DOC (RNBx)                    Date: July 19, 2011
                                                     Page 4

| Winters | | | |
|---|---|---|---|
| | | Total Lodestar | $2,197,476 |
| | | Total Costs | $123,552.00 |
| | | Total Fees and Costs | $2,321,028 |

      The Court will separately analyze Counsel's hours and fees to determine if any departure from the already-reduced figure of $1,100,000 is necessary.

      **A. Hours**

      Courts "should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008); *Blackwell v. Foley*, 724 F. Supp. 2d 1068, 1081 (N.D. Cal. 2010) ("An attorney's sworn testimony that, in fact, [she] took the time claimed . . . is evidence of considerable weight on the issue of the time required."). To reduce the number of hours worked, "it must appear that the time claimed is obviously and convincingly excessive under the circumstances." *Blackwell*, 724 F. Supp. 2d at 1081. "It must also be kept in mind that lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee." *Moreno*, 534 F.3d at 1112.

      The presumption that attorneys' claimed hours are reasonable is essential because "the purposes of the [fee-shifting] statutes will not be met" unless plaintiffs' attorneys are "reasonably compensated for all their time." *Id.* Courts must award appropriate compensation to ensure that competent counsel will take on cases that seek to protect an important public right but may not be financially lucrative. *See City of Burlington v. Dague,* 505 U.S. 557, 568 (1992) ("Congress' purpose in adopting fee-shifting provisions was to strengthen the enforcement of selected federal laws by ensuring that private persons seeking to enforce those laws could retain competent counsel."). *See also Parkinson v. Hyundai Motor America,* 796 F. Supp. 2d 1160, 1164 (C.D. Cal. 2010) ("Without the incentive of a fee award, plaintiffs, such as the class in this case, could not afford to hire counsel to vindicate their rights.").

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 10-01392-DOC (RNBx)                                  Date: July 19, 2011
                                                                   Page 5

---

Plaintiffs establish the reasonableness of Counsel's hours through their moving papers and declarations. *See* Motion for Summary Judgment, 12-14; Righetti Decl. ¶ 1-7, 18-20. Counsel also exercised billing judgment by reducing the total lodestar amount and costs by half. *See id.* Importantly, Counsel has been litigating the present case for over six years, including a multitude of motions, significant discovery, and a trip to the Ninth Circuit and back. Even if Counsel recovered the entire requested adjusted lodestar figure of $1,100,000, it would amount to fees and costs of slightly over $183,000 per year, which is not a substantial sum, particularly for two partners and two associates. Additionally, because the FLSA is a remedial statute, it "must not be interpreted or applied in a narrow grudging manner." *Tennessee Coal, Iron & R.R. Co. v. Muscoda Local No. 123,* 321 U.S. 590, 597, 64 S.Ct. 698, 88 L.Ed. 949 (1944). Plaintiffs' requested fees thus appear to be eminently reasonable.

Because Plaintiffs established the reasonableness of Counsel's hours, the burden shifts to Defendant to rebut that finding with evidence challenging the accuracy and reasonableness of the hours. *See Gates v. Deukmejian*, 987 F.2d 1392, 1397-98 (9th Cir. 1992). Defendant argues that Counsel's hours are unreasonable because: (1) the hours spent pursuing unsuccessful, unrelated claims should be deducted; (2) the remaining lodestar is not commensurate with Counsel's minimal success; (3) the hours are inadequately documented; and (4) the hours are inflated. All four arguments fail to meet Defendants' burden on rebuttal.

1.  Unsuccessful Claims

Defendant first argues that Counsel is not entitled to fees for the non-PDT claims initially pursued by Plaintiff because they were both unsuccessful and unrelated to Plaintiffs' successful PDT claim. Pursuant to the Supreme Court's decision in *Hensley v. Eckerhart,* 461 U.S. 424 (1983), the Ninth Circuit has developed a two-part analysis to determine when a plaintiff may recover attorneys' fees for unsuccessful claims.

> First, the court asks whether the claims upon which the plaintiff failed to prevail were related to the plaintiff's successful claims. If unrelated, the final fee award may not include time expended on the unsuccessful claims. If the unsuccessful and successful claims are related, then the court must apply the second part of the analysis, in which the court evaluates the 'significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.' If the plaintiff obtained

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 10-01392-DOC (RNBx)                          Date: July 19, 2011
                                                           Page 6

---

'excellent results,' full compensation may be appropriate, but if only 'partial or limited success' was obtained, full compensation may be excessive. Such decisions are within the district court's discretion.

*Banta v. City of Merrill, Or.,* CIV. 06-3003-CL, 2007 WL 3543445, at *3 (D. Or. Nov. 14, 2007) (citing *Thorne v. City of El Secundo,* 802 F.2d 1131, 1142 (9th Cir. 1986)). To determine whether claims are related, courts are directed to examine "whether relief sought on the unsuccessful claim 'is intended to remedy a course of conduct that gave rise to the injury on which the relief granted is premised.'" *Thorne,* 802 F.3d at 1141. Unrelated claims are "distinctly different" and based on different facts and legal theories, while related claims "involve a common core of facts or [are] based on related legal theories." *Banta,* 2007 WL 3543445, at *3 (quoting *Hensley,* 461 U.S. at 434-35, 437 n. 12).

     a. <u>State claims</u>

     Defendant challenges the inclusion of hours Counsel spent on "abandoned" state law claims that are now proceeding in a separate state court action. *See* Opposition, 6. Defendant, however, ignores the fact that Counsel has already taken that split into account and reduced the lodestar accordingly. *See* Glugoski Decl., ¶ 13 ("[T]he lodestar request was capped at $1,100,000.00 to address any potential claim that the work relates more to the state law case than the federal case."). This Court has no reason not to take Counsel at its word that time spent on state court claims is not included in the adjusted lodestar amount, particularly given that there is no basis for asserting that the state law claims would have consumed more time than the federal claims.

     b. <u>Federal claims</u>

     Defendant also argues that Plaintiffs' unsuccessful federal claims are unrelated to the successful PDT claim. As discussed in more depth above, in determining whether the claims are related,

     the test is whether relief sought on the unsuccessful claim is intended to remedy a course of conduct entirely distinct and separate from the course of conduct that gave rise to the injury on which the relief granted is premised. Thus the focus is to be on whether the unsuccessful and successful claims arose out of the same conduct.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 10-01392-DOC (RNBx)                          Date: July 19, 2011
                                                           Page 7

---

*Schwarz v. Sec'y of Health & Human Servs.,* 73 F.3d 895, 901, 903 (9th Cir. 1995)
(quoting *Thorne v. City of El Segundo*, 802 F.2d 1131, 1141 (9th Cir. 1986)).

       Here, Plaintiffs' federal claims all alleged violations of the same statute as the
PDT claim: 29 U.S.C. § 216(b). Plaintiffs' federal claims all related to Defendant
requiring its employees to perform work "off-the-clock"; the only difference between
each claim was the specific practice at issue. These federal claims could logically have
been labeled as one cause of action alleging a violation of the FLSA based on
Defendant's policy to require unpaid work. As such, all of Plaintiffs' federal claims
utilized the same line of legal research and analysis. These claims each challenge the
*same* general policy of an employer as being a violation of the *same* law; they clearly
"involve a common core of facts" and are "based on related legal theories." *Banta,* 2007
WL 3543445, at *3 (quoting *Hensley,* 461 U.S. at 434-35, 437 n. 12). Further, the relief
sought on the unsuccessful claims – a prohibition on off-the-clock work – was "intended
to remedy a course of conduct that gave rise to the injury on which the relief granted is
premised.'" *Thorne,* 802 F.3d at 1141. Both the unsuccessful federal claims and the
successful PDT claim alleged injury based on off-the-clock work and sought appropriate
compensation for the time spent on that work.

       This case closely mirrors *Head v. Glacier Northwest, Inc.*, where the court found
that claims for failure to accommodate, retaliation based on a request for reasonable
accommodation, and wrongful discharge based on disability discrimination were related,
despite the fact that each of the claims had different elements. No. CV 02-373 RE, 2006
WL 1222650, at *6 (D. Or. Mar. 24, 2006). The court held that "plaintiff's evidence was
in large part intended to prove a course of conduct that was related to all those claims, *i.e.*
defendant's hostility at the imposition caused by plaintiff's request for a reasonable
accommodation," such that "there was a common core of facts based on related legal
theories." *Id.* Similarly, here, Plaintiffs attempted to prove that Defendant engaged in a
course of conduct designed to force its employees to engage in off-the-clock work.
Plaintiffs' claims in the present case were not only based on related legal theories but
upon the exact same law, the FLSA. This case is thus distinguishable from cases in which
different claims were based on violations of different regulations. *See, e.g. Sanford v.
GMRI, Inc.,* No. CVS  04-1535 DFL CMK, 2005 WL 4782697, at *2 (E.D. Cal. Nov. 14,
2005) (reducing fees where unsuccessful claims required the application of different
sections of the ADA Accessibility Guidelines); *Levine v. City of Alameda,* No. C 04-
01780 CRB, 2006 WL 1867522, at *5 (N.D. Cal. Jul. 5, 2006) (age discrimination claim
not related to procedural due process claim). Plaintiffs' unsuccessful federal claims are

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 10-01392-DOC (RNBx)                          Date: July 19, 2011
                                                           Page 8

---

related to the successful PDT claim because they were intended to remedy the same course of conduct and are based upon the same legal theory.

        2. Reasonableness of hours, given the level of success achieved

        Given that the claims are related, the Court must now evaluate the "significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Thorne,* 802 F.2d at 1142. Defendant challenges the reasonableness of Counsel's hours based on: (1) lack of success; (2) inadequate documentation; and (3) inflated hours. None of these arguments are persuasive to the Court.

        a. Level of success

        i. Number of opt-ins

        Defendant first argues that Counsel's recovery should be reduced because they only yielded 22 viable opt-in class members out of a potential class of 289.[4] *See* Opposition, 8. This Court disagrees. It is well-established that there are strong disincentives for employees to participate in a class action against their current or former employer, particularly when the suit requires an affirmative opt-in, as does the FLSA. *See Phillips Petroleum Corp. v. Shutts*, 472 U.S. 797, 812-13 (1985) (rejecting a constitutional requirement for opt-in process in part because "[r]equiring a plaintiff to affirmatively request inclusion would probably impede the prosecution of those class actions involving an aggregation of small individual claims, where a large number of claims are required to make it economical to bring suit"); Andrew C. Brunsden, *Hybrid Class Actions, Dual Certification, and Wage Law Enforcement in the Federal Courts*, 29 Berkeley J. Emp. & Lab. L. 269, 291-301 (2008) (empirically documenting and analyzing low participation rates produced by the opt-in rule and discussing how those low rates influence the effectiveness of wage and hour laws); Rachel Alexander, *Federal Tails and State Puppy Dogs: Preempting Parallel State Wage Claims to Preserve the Integrity of Federal Group Wage Actions*, 58 Am. U. L. Rev. 515, 518 (2009) ("Historically, the FLSA's opt-in mechanism has limited the size of the FLSA action, with estimates indicating that typically only between fifteen and thirty percent of potential plaintiff-employees opt-in.").

---

[4] Counsel originally attracted 33 opt-in plaintiffs, but dismissed nine due to bankruptcy, statute of limitations issues, and discovery issues.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 10-01392-DOC (RNBx)                          Date: July 19, 2011
                                                                                 Page 9

---

As an initial matter, the FLSA opt-in structure excludes apathetic or inertia-bound potential class members who are overcome by the effort required to opt-in but necessarily expressing an opinion on the merits of the case. Additionally, as in the present case, counsel can encounter serious difficulty in locating all of the members of the potential class. *See* Reply, 16-17. And, even if potential class members received the notice, there is a significant possibility that at least some potential class members did not understand the import of the notice and so took no action. In a Rule 23(b)(3) class, apathetic, uninformed, or missing class members would be included; under the FLSA, they are excluded.  *See Guzman v. VLM, Inc.,* No. 07-CV-1126 (JG) (RER), 2008 WL 597186, at *9 (E.D.N.Y. Mar. 2, 2008) ("the opt-out nature of a class action is a valuable feature lacking in an FLSA collective action"); Craig Becker & Paul Strauss, *Representing Low-Wage Workers in the Absence of a Class: The Peculiar Case of Section 16 of the Fair Labor Standards Act and the Underenforcement of Minimum Labor Standards*, 92 Minn. L. Rev. 1317, 1325-29 (2008) (listing reasons for low participation in FLSA lawsuits, including undeliverable notices and unfamiliarity with English and legal terms).

Finally, and most troublingly, courts have consistently recognized that the "fear of economic retaliation" will force workers "quietly to accept substandard conditions," dissuading employees from participating in lawsuits against their employers. *Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S. Ct. 1325, 1333 (2011). *See also Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625 (5th Cir.1999) (explaining that it is "reasonably presumed" that potential class members still employed by employer "might be unwilling to sue individually or join a suit for fear of retaliation at their jobs"); *Ladegaard v. Hard Rock Concrete Cutters, Inc.*, No. 00 C 5755, 2000 U.S. Dist. Lexis 17832, at *14 (N.D. Ill. Dec. 1, 2000) ("Although there is only plaintiff's suggestion of intimidation in this instance, the nature of economic dependency involved in the employment relationship is inherently inhibiting."); *Dunlop v. Carriage Carpet Co.,* 548 F.2d 139, 147 (6th Cir. 1977) (holding that a former employee "is as much in need of the § 15 shield from retaliation as workers still on the job or workers who have been discharged for their protected activities"); *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 163 (S.D.N.Y. 2008) ("[E]mployees may feel intimidated about volunteering to participate in an opt-in collective action.") (internal quotations and citation omitted).

A retaliation suit can only be filed *after* an adverse employment act takes place; many workers are unwilling or financially unable to take the risk of inducing that adverse employment action. These fears are far from irrational, given the fact that case law is replete with examples of FLSA retaliation cases. *See, e.g., Recinos-Recinos v. Express*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 10-01392-DOC (RNBx)                              Date: July 19, 2011
                                                              Page 10

---

*Forestry, Inc.,* No. 05-1355, 2006 U.S. Dist. LEXIS 2510 (E.D. La. Jan. 27, 2006)
(entering protective order prohibiting defendants from contacting potential opt-in
plaintiffs in FLSA collective action after defendants' agents engaged in a campaign
designed to threaten, intimidate, and coerce plaintiffs to withdraw their claims);
*Contreras v. Corinthian Vigor Ins. Brokerage, Inc.,* 103 F. Supp. 2d 1180, 1185 (N.D.
Cal. 2000) (reporting former employee to INS and SSA for her undocumented alien
status constituted an adverse employment action in retaliation for the employee's
assertion of claims under the FLSA); *Reardon v. Mass. Gen. Hosp.,* No. 09-11900-JLT,
2012 WL 948425, at *4 (D. Mass. Mar. 19, 2012) (denying defendant's summary
judgment motion because a reasonable factfinder could infer that it terminated plaintiff as
a reprisal for her repeated complaints about being paid overtime); *Longcrier v. HL-A Co.,
Inc.,* 595 F. Supp. 2d 1218, 1230-31 (S.D. Ala. Dec. 10, 2008) (entering protective order
after learning that defendant "engaged in communications with prospective class
members that were abusive and that threatened the proper functioning of this litigation").

        Given the myriad reasons employees have not to opt-in to FLSA collective
actions, this Court does not agree that a low participation rate is any reflection on
Counsel's competence or success and, as such, should not affect the amount of fees due
Counsel. *Cf. Lowery v. Cash's Cabanas, Inc.,* No. 3:08cv186/MCR/MD, 2011 U.S. Dist.
LEXIS 15720, at *18-19 (N.D. Fla. Jan. 4, 2011) (reciting the many reasons for non-
participation by potential class members but still concluding that low turnout warranted a
negative inference against counsel seeking attorneys' fees); *Tarlecki v. Bebe Stores, Inc.,*
No. C 05-1777 MHP, 2009 U.S. Dist. LEXIS 102531, at *12 (N.D. Cal. Nov. 3, 2009)
(finding that a low participation rate weighed in favor of downward departure from the
benchmark percentage). This Court declines to follow these unpublished cases, as they
fail to adequately account for the reality of employees who face a "Hobson's choice"
between risking employer retaliation and "quietly . . . accept[ing] substandard
conditions." *See Mitchell v. Robert DeMario Jewelry, Inc.,* 361 U.S. 288, 292-93 (1960).

                ii. Settlement terms

        Defendant also argues that because Plaintiffs only prevailed on one of their FLSA
claims – the PDT claim – their attorneys' fees must be reduced accordingly. Yet, the
Supreme Court has clearly rejected "a mathematical approach comparing the total
number of issues in the case with those actually prevailed upon," reasoning that "[s]uch a
ratio provides little aid in determining what is a reasonable fee in light of all the relevant
factors." *Hensley,* 461 U.S. at 435 n. 11, 103 S.Ct. at 1940 n. 11. *See also City of*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 10-01392-DOC (RNBx)                                   Date: July 19, 2011
                                                                     Page 11

---

*Riverside v. Rivera,* 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986) ("reject[ing] the proposition that fee awards . . .should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers"). The same logic applies to claims pursued under the FLSA. *See James v. Wash Depot Holdings, Inc.,* 489 F. Supp. 2d 1341, 1347 (S.D. Fla. 2007) ("Given the nature of the claims under the FLSA and the remedial purpose of the Act, it is not uncommon that the attorneys' fees will exceed the amount recovered by the plaintiff."); *Heder v. City of Two Rivers,* 93 Fed. Appx. 81, 83 (2004) (applying *Rivera* to FLSA case and upholding award of attorneys' fees where plaintiff "obtained a precedent that doubtless will be valuable to other firefighters"); *Saizan v. Delta Concrete Products Co., Inc.,* 448 F.3d 795, 799 (5th Cir. 2006) ("In a lawsuit initiated under the FLSA, an attorney's failure to obtain every dollar sought on behalf of his client does not automatically mean that the modified lodestar amount should be reduced.") (internal citations omitted).

Because the parties' settlement in this case is confidential, the Court will not discuss its specific terms in the present Order, which will be publicly filed. This Court has, however, closely reviewed the settlement and finds that Plaintiffs' requested attorneys' fees are commensurate with their success in this lawsuit. Although Plaintiffs' theories of recovery were reduced by this Court's summary judgment order, Plaintiffs recovered an amount for their clients that was not insubstantial and also made a positive contribution to the case law for similarly situated workers by way of the Ninth Circuit's order upholding Plaintiffs' PDT claim. *See Heder,* 93 Fed. Appx. at 83 (weighting the creation of valuable precedent when considering a request for attorneys' fees); *Head,* 2006 WL 1222650, at *6 (although plaintiff did not recover all the damages he sought, he obtained "a reasonable sum for wage loss," as well as emotional distress damages, which the court considered success). Further, Counsel has already, of their own accord, reduced their requested lodestar by half. That reduction more than covers any consideration of partial success, as well as any time spent on state law claims that are now proceeding in a separate action. "It must be remembered that an award of attorneys' fees is not a gift. It is just compensation for expenses actually incurred in vindicating a public right." *Blackwell v. Foley,* 724 F. Supp. 2d 1068, 1077 (N.D. Cal. 2010) (internal citations omitted).

Because this Court finds that Plaintiffs' success is commensurate with Counsel's requested attorneys' fees, it will now move on to analyze Defendant's other challenges to the reasonableness of Counsel's hours.

   b. <u>Documentation</u>

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 10-01392-DOC (RNBx)                                    Date: July 19, 2011
                                                                                              Page 12

---

        One factor that may be used to reduce the number of hours entered into the lodestar calculation is inadequate documentation. *Hensley,* 461 U.S. at 433, 103 S.Ct. at 1939. Defendant challenges Plaintiffs' documentation by arguing that (1) there is no evidence that associates Michael Righetti and Erin Breznikar-Winters and the paralegals worked the hours claimed; and (2) the time entries lack sufficient detail.


        i.   Associate and Paralegal Hours

        Defendant first challenges the hours of associates Michael Righetti and Erin Breznikar-Winters and unnamed paralegals because they have not submitted any declarations attesting to the hours they spent on this case. Opposition, 14. Curiously, Plaintiffs do not respond to this contention in any way in their Reply. This Court is not willing to award attorneys' fees when those attorneys have not even declared under penalty of perjury that the stated hours are accurate. The hours of Michael Righetti and Erin Breznikar-Winters and any paralegals are accordingly DENIED.

        ii. Sufficient Detail

        "[C]ounsel bears the burden of submitting detailed time records justifying the hours claimed to have been expended." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986) *opinion amended on denial of reh'g,* 808 F.2d 1373 (9th Cir. 1987). "Illegible, abbreviated time records, submitted in a form not reasonably capable of evaluation, do not satisfy the burden of submitting detailed time records justifying the hours claimed. *Stewart v. Gates*, 987 F.2d 1450, 1453 (9th Cir. 1993) (internal citations omitted).Yet, "Plaintiff's counsel, of course, is not required to record in great detail how each minute of his time was expended. But at least counsel should identify the general subject matter of his time expenditures." *Hensley,* 461 U.S. at 437, n.12. *See also Davis v. City and County of San Francisco,* 976 F.2d 1536, 1542 (9th Cir. 1992) (modified on other grounds) (time record describing several hours as having been spent at a counsel's meeting discussing issues related to the filing of plaintiff's complaint was sufficient to pass muster under the *Henley* standard).

        Here, Plaintiffs have provided eighty-three pages of billing records, which detail the attorney, the task, and the time spent on each task. The fact that they are organized by week and not by day is of no import, contrary to Defendant's contention. The Court is able to analyze which attorney worked on which task and for how long. That is certainly sufficient to meet Plaintiffs' burden with respect to their documentation of hours. *See,*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 10-01392-DOC (RNBx)                    Date: July 19, 2011

                                                     Page 13

---

*e.g., C.B. v. Sonora School Dist.,* No. 1:09-cv-00285-OWW-SMS, 2011 WL 4590775, at
*2 (E.D. Cal. Sept. 30, 2011) (level of detail in billing records was deemed adequate
because there was "a delineation of services performed and hours expended for each
service described."); *Sanchez v. Bank of America,* No. 09-5574 SC, 2010 WL 2889033, at
*4 (N.D. Cal. July 22, 2010) (billing records considered "detailed" and "helpful" because
they contained each discrete action taken, the amount of time spent on each action, and
the billing rate for each person who performed that action).

      c. Unreasonably high hours

      Defendant also asserts that Counsel's lodestar figure should be decreased because
Counsel spent unreasonably excessive hours on this litigation.

        i. Amount of time spent on tasks

      Defendant first argues that Counsel, highly experienced wage and hour
practitioners, spent too many hours on "simple tasks." Opposition, 15-16. For example,
Defendant challenges the fact that Counsel spent 12.2 hours preparing and reviewing a
"boilerplate" complaint, 5.3 hours preparing a declaration, and 6.8 hours summarizing a
deposition. *Id.* at 16. While Defendant is correct that a court may credit a party with
fewer hours if the time claimed is "excessive, redundant, or otherwise unnecessary,"
*Hensley,* 461 U.S. at 434, 103 S.Ct. at 1939, the Court does not find any of these
highlighted hours *per se* unreasonable.  *See Charlebois v. Angels Baseball LP,* No.
SACV 10-0853 DOC (ANx), 2012 WL 2449849, at *11 (C.D. Cal. May 30, 2012)
("[T]he Court suspects that several of the complaints it dismisses every week fail to state
a claim because attorneys spend too *little* time researching the grounds for their case; the
Court sees no reason why it should punish the attorney that researches the law and facts
before putting paper to pen."). This Court does not wish to encourage shoddy
worksmanship by strictly limiting the amount of time counsel are permitted to spend on
discrete legal tasks. "Defendants would have the Court penalize [Counsel] for litigating
the case in a manner that afforded [P]laintiff[s] quality representation, and the Court will
not do so." *Blackwell,* 724 F. Supp. 2d at 1079. Litigation is not a contest that prioritizes
speed, and attorneys pursuing FLSA collective action claims already have significant
financial incentive to be efficient.  *See Moreno,* 534 F.3d at 1112 ("lawyers are not likely
to spend unnecessary time on contingency fee cases in the hope of inflating their fees.
The payoff is too uncertain, as to both the result and the amount of the fee."). This Court
does not wish to engage in armchair quarterbacking, nor will it encourage attorneys to

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 10-01392-DOC (RNBx)                          Date: July 19, 2011
                                                                                Page 14

litigate in a way that may jeopardize the quality of their representation. This Court does not find that Plaintiffs have claimed any hours that were "excessive, redundant or otherwise unnecessary." *Hensley,* 461 U.S. at 434, 103 S.Ct. at 1939.

      ii. Duplicative time

The overstaffing of a case may justify a gap between the hours actually spent and the number of hours deemed reasonable. *Hensley,* 461 U.S. at 434, 103 S.Ct. at 1939; *Chalmers,* 796 F.2d at 1212. Defendant argues that the claimed hours are duplicative, both in terms of work performed by lower-billing timekeepers and by the two primary partners. Opposition, 16-17.

First, given that this Court has already rejected the hours of the two associates and paralegals, Defendant's concern about partners' overlap with lower-billing timekeepers has already been addressed.

Second, this Court does not agree that Counsel's fees should be reduced simply because both partners spent time on the same task. Defendant, for example, points to the fact that both Righetti and Glugoski spent large amounts of time preparing for oral argument at the Ninth Circuit as evidence of duplicative time. Given that Plaintiffs ultimately prevailed at the Ninth Circuit on one of their primary claims, this time appears to have been well-spent. The fact that only one attorney argued the case does not preclude another attorney from assisting with the preparation for oral argument. In *Charlebois,* for example, the defendants argued that the hours billed by one attorney for reviewing another attorney's work should have been excluded from the lodestar figure. 2012 WL 2449849, at *12. This Court rejected that argument and "decline[d] to reduce the hours simply because Class Counsel kept each other informed about the case and double-checked each other's work; indeed, many motions this Court denies would have benefitted from a second read and more strategizing by the attorneys involved." *Id. See also Davis,* 976 F.2d at 1544 (upholding the district court's determination that it was reasonable for multiple attorneys to spend time on the case because "broad-based class litigation often requires the participation of multiple attorneys"); *Chabner v. United of Omaha Life Ins. Co.,* C-95-0447 MHP, 1999 WL 33227443, at *4 (N.D. Cal. Oct. 12, 1999) ("Common sense dictates that . . . a number of people might contribute to one end product."); *Nat'l Federation of the Blind v. Target Corp.,* No. C 06-01802 MHP, 2009 WL 2390261, at *5 (N.D. Cal. Aug. 3, 2009) ("[I]t is often more efficient for lawyers with complementary skill sets to cooperate in performing a task. The use of two attorneys

for such a task is hardly extravagant."). This Court finds that there is no duplication of work that would require any further reduction in fees, given the Court has already precluded the hours of the associates and paralegals.

### B.  Rates

The United States Supreme Court has held that fee awards to public interest attorneys who do not charge their clients—such as Counsel—are "calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel." *Blum,* 465 U.S. at 895. "The proper reference point in determining an appropriate fee award is the rates charged by private attorneys in the same legal market as prevailing counsel." *Trevinu v. Gates,* 99 F.3d 911, 925 (9th Cir.1996); *Blum,* 65 U.S. at 895, fn. 11 ("[R]ates charged in private representations may afford relevant comparisons.").

Plaintiffs have established the reasonableness of Righetti and Glugoski's fee rates through the declarations by Counsel and two other attorneys who litigate class action cases in California, as well as prior cases that have approved the requested fee rates. *See* Righetti Decl.; Righetti Decl., Exh.5, 6. *See also United Steelworkers of Am. v. Phelps Dodge Co.*, 896 F.2d 403,407 (9th Cir. 1990) ("Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determination in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate."); *Bouman v. Block,* 940 F.2d 1211, 1235 (9th Cir. 1991) (the submission of "declarations stating that the rate was the prevailing market rate in the relevant community [was] ... sufficient to establish the appropriate rate for lodestar purposes"); *Nadarajah v. Holder*, 569 F.3d 906, 917 (9th Cir. 2009) (affirming award of attorneys' fees at rate of $500 per hour where party had submitted a declaration describing her experience and attached copies of fee awards in the same geographical area where counsel had comparable experience).

Because Plaintiff established reasonableness of Counsel's fee rates, the burden shifts to Defendants to rebut with evidence challenging the accuracy and reasonableness of the rates. *See Deukmejian*, 987 F.2d at 1397-98.   Defendant argues that Counsel's fee rates are unreasonable because in the cases cited by Plaintiffs, their fee rates were not challenged by opposing counsel. Opposition, 22. The Court does not find this distinction determinative, as courts are required to evaluate the reasonableness of counsel's fees,

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 10-01392-DOC (RNBx)                    Date: July 19, 2011
                                                      Page 16

---

regardless of a challenge by opposing counsel. Defendant also points to the fact that another court assigned lower rates to Righetti and Glugoski. Opposition, 22. That case, however, utilized 2007-08 fee rates, and it is well-established that counsel is entitled to current, not historic, hourly rates. *See Missouri v. Jenkins,* 491 U.S. 274, 284, 109 S. Ct. 2463, 105 L. Ed. 2d 229 (1989) (court may account for delay in payment through use of current rates); *Cruz ex rel. Cruz v. Alhambra Sch. Dist.,* 601 F. Supp. 2d 1183, 1195 (C.D. Cal. 2009). Defendant's arguments are thus insufficient to rebut Plaintiff's evidence establishing the propriety of their current fee rates.

Defendant also argues that Counsel's rates should be reduced for the time that the partners spent on "associate and paralegal work." Opposition, 23. The Ninth Circuit, however, has held upheld attorneys' fees awards where district courts applied a uniform legal rate to all tasks. *Davis,* 976 F.2d at 1548 ("Private practitioners do not generally charge varying rates for the different lawyerly tasks they undertakes on a given case, and we have squarely held that the district courts can act accordingly in their calculation of fee awards."). *See also Blackwell,* 724 F. Supp. 2d at 1080; *Gates v. Rowland,* 39 F.3d 1439, 1451 (9th Cir. 1994); *Nat'l Federation of the Blind,* 2009 WL 2390261, at *5 ("The Ninth Circuit has established that travel time and clerical tasks are reasonable compensated at normal hourly rates if such is the custom in the relevant legal market."). As such, this Court is not persuaded by Defendant' contention that Counsel's rates should be dependent upon the tasks performed.

The Court finds that Righetti's rate of $750/hour is reasonable, as is Glugoski's rate of $650/hour.

## C. Kerr Factors

Defendant has not attempted to challenge Plaintiffs' attorneys' fees request based on any Kerr factors not already subsumed in the lodestar inquiry. As the Ninth Circuit explained,

> *Blum* does not stand for the proposition that a requested attorney's fee may be reduced twice-for unsuccessful claims, and again if the final award reflects only partial success. Nor does *Hensley,* which although it reflected the Court's thinking before it explicitly held that the "results obtained" inquiry is subsumed in the lodestar, allowed for only a single reduction of the fee award to reflect a plaintiff's degree of success. In ordinary cases, the "results obtained" or "degree of success" inquiry is indivisible and should not be parsed.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 10-01392-DOC (RNBx)                    Date: July 19, 2011
                                                     Page 17

---

*Cunningham*, 879 F.2d at 488 (internal citations omitted). As such, there are no other asserted grounds under which Defendant argues Counsel's fees should be reduced.

### D. Costs

Reasonable litigation expenses are ordinarily included in an award of attorneys' fees pursuant to the FLSA. *Wales v. Jack M. Berry, Inc.,* 192 F. Supp. 2d 1313, 1329 (M.D. Fl. 2001). Expenses such as reimbursement for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service, mediation, exhibits, documents scanning, and visual equipment are typically recoverable. *Id.* In *Wales,* however, plaintiffs' counsel included not only an affidavit but also expense receipts and records categorized into fifteen exhibits. *Id.* Here, Plaintiffs have attached a half-page table that merely includes general headings such as "travel/lodging/rental cars" and a total cost for each category. Righetti Decl., Exh. 3. While "an accounting for each postage stamp, photocopy, or telephone call is impracticable," *Wales,* 192 F. Supp. 2d at 1330, "expense requests unaccompanied by adequate supporting documentation will result in a reduction or elimination of the expense." *Id.* (citing *Ramos v. Patrician Equities Corp.,* No. 89-CIV 5370 (TPG), 1993 WL 58428, at *42 (S.D.N.Y. Mar. 3, 1993)). Plaintiffs did not support their costs request with any supporting documentation, even when Defendant challenged those requests in its Opposition. There is no excuse for the complete dearth of any records whatsoever; in order to determine Plaintiffs' costs down to the cent, as they do, Plaintiffs must have records that they curiously and inadvisably chose not to provide. Without any such records, the Court is left with no way to verify the accuracy or reasonableness of such costs, which are hereby DENIED.

### IV.    Disposition

For the aforementioned reasons, this Court finds Plaintiffs' adjusted lodestar amount of $1,100,000 reasonable, except to the extent it seeks hours for associates and paralegals that have not submitted declarations and costs for which it has provided no supporting documentation. The adjusted lodestar amount will thus be reduced by

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 10-01392-DOC (RNBx)                    Date: July 19, 2011
                                                     Page 18

---

$199,482, which is the amount of fees claimed by the associates[5] ($75,930) plus the requested costs ($123,552), resulting in a total fees award of $900,518.

MINUTES FORM 11
CIVIL-GEN                                                    Initials of Deputy Clerk: jcb

---

[5] It does not appear that the paralegal fees were ever considered in the lodestar figure, such that they do not need to be subtracted now.